UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | April 10, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Renee Fisher | None | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| None | | None | |

**Proceedings:** (In Chambers)

### ORDER RE: MOTIONS TO DISMISS

#### I.
#### INTRODUCTION

Plaintiff Alan Darush MD, APC brings this action pursuant to California's anti-trust statute, the Cartwright Act, alleging that Defendants Revision, L.P. ("Revision") and Lovely Skin, Inc. ("Lovely Skin") (collectively "Defendants") engaged in the illegal vertical price fixing of Revision's skin care products.

Revision is a supplier of skin care products. Lovely Skin is, like Plaintiff, a retailer of skin care products. Plaintiff and Lovely Skin are both retail sellers of Revision's products. Plaintiff contends that Revision and Lovely Skin conspired to fix the minimum price of certain Revision products, and Revision stopped supplying Plaintiff with its products because Plaintiff refused to participate in the price fixing agreement.

Both Defendants now move to dismiss Plaintiff's First Amended Complaint ("FAC") for failure to state a claim. (Docket No. 23, [Revision Mot. to Dismiss ("R-Mem.")]; Docket No. 24, [Lovely Skin Mot. to Dismiss ("L-Mem.")].) They assert that Plaintiff's complaint does not state any kind of price-fixing arrangements but that, even if it did, it has at most alleged a vertical price maintenance scheme which would not offend the Cartwright Act.

For the reasons that follow, the Court finds that Plaintiff has not adequately stated a claim under the Cartwright Act because it has failed to sufficiently allege any conspiracy that has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | April 10, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

caused Plaintiff injury. Accordingly, Plaintiff's FAC is **DISMISSED with leave to amend**.

## II.
## BACKGROUND

Plaintiff alleges that beginning in or about 2005, Revision began selling its skin care products to Plaintiff. (Docket No. 16, [First Am. Compl ("FAC")] ¶ 10.) Among these products was the "Teamine Eye Complex by Revision," alleged to be quite popular. (Id. ¶¶ 9-10.) Plaintiff alleges that he was successful in selling Revision products, selling by 2008 "tens of thousands of dollars of Revision skin care products on a monthly basis." (Id. ¶ 10.)

During the time Plaintiff was selling Revision products, "Revision purported to announce a minimum resale price known as a manufacturer's suggested retail price . . . ." (Id. ¶ 11.) Plaintiff alleges that "Plaintiff's retail competitors did not abide [sic] Revision's MSRP," and so to compete in the market, Plaintiff continued to sell below the MSRP. (Id. ¶ 12.) In or around fall and winter of 2008, Revision representatives allegedly contacted Plaintiff multiple times in person and over the phone in an attempt to get Plaintiff to raise his prices. (Id. ¶ 13.) Plaintiff declined, and, in or around January 2009, Revision stopped supplying its products to Plaintiff. (Id.) Plaintiff's main complaint is thus: "In short, Revision stopped selling its skin care products to Plaintiff because Plaintiff repeatedly refused to participate in an unlawful vertical price fixing scheme." (Id. ¶ 14.)

Plaintiff alleges that during 2009, if not earlier, Revision and Lovely Skin conspired to raise and fix the price of Revision products "to eliminate retailers of Revision skin care products, including Plaintiff, who refused to participate in the price-fixing agreement." (Id. ¶ 15.) Plaintiff provides alleged email communications between Revision and Lovely Skin, which Plaintiff believes demonstrate a common objective to raise prices by eliminating retail competitors that would not fix prices. Plaintiff does not provide copies of the actual emails, but simply quotes excerpts; Plaintiff provides some names of the sender or recipient, but other times refers vaguely to "representatives". Those excerpts are as follows:

February 17, 2009, an email from a Revision representative to a Lovely Skin representative: "I remember about a year ago, we had a conversation regarding the low Teamine prices on the web and the fact that you would like to charge more on your website, but found it hard to compete with others." The email went on to say: "I am proud to say that we have uncovered some of the biggest sites and have either shut them down or they have been given warnings to comply with our web policy." The email also listed sites that Revision stopped supplying with its products, and further stated: "With

LINKS: 23, 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | April 10, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

this achievment, we will be looking in the near future for the advertised price of Teamine to rise to at least $55.00 from our customers. We want to continue to partner with customers such as you and in the end, you will be even stronger with Revision because we have chosen to discontinue business with the above mentioned sites . . . ." (Id. ¶¶ 16-17.)

February 18, 2009, an email from Dr. Joel Schlessinger, owner of Lovely Skin, to Revision, where Dr. Schlessinger stated that he was pleased with the news conveyed in Revision's February 17th email. Dr. Schlessinger inquired as to whether Revision had any luck with an unnamed website selling Revision products at a large discount. Dr. Schlessinger further stated: "Also, if you have any names that you can let us know as to who to deal with on these sites, perhaps you can pass them on so they can be stopped on other lines as well." (Id. ¶ 18.)

February 20, 2009, an email from a Revision representative to Dr. Schlessinger stating that Revision eliminated another retail competitor. (Id. ¶ 19.)

May 28, 2009, an email from a Revision representative to a Lovely Skin representative: "I also want to let you know we continue to make amazing strides to combat the Teamine Eye Complex price reductions on the internet. We have located many sites and have either had them raise their price or discontinued shipping products to them altogether. We are starting to see the price rise to a higher level which is good for all of our accounts . . . . I know that you lowered your internet price on Teamine last year in response to the increasingly discounted price of the product on the internet. However, with our progress, as the price is rising, we would ask that you raise your price accordingly." (Id. ¶ 21.)

May 29, 2009, an email from Dr. Schlessinger to a Lovely Skin representative: "That is great to hear . . . . As to the prices, we would love to increase our prices if the others are, too." (Id. ¶ 22.)

November 2009, an email from a Lovely Skin representative to a Revision representative: "[C]an you tell us which companies you won't be shipping products to anymore so we aren't wasting our time keeping an eye on them?" This elicited a response wherein the Revision representative provided a detailed list of all the website distributors it contacted, including those distributors that agreed to increase their prices and those Revision stopped supplying products to. (Id. 20.)

On the basis of the aforementioned allegations, Plaintiff brings two claims: (1) violation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | April 10, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, et seq.; and (2) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.

## III.
## DISCUSSION

### A. RULE 12(B)(6) LEGAL STANDARD

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), a court must accept as true all factual allegations pleaded in the complaint, and construe them "in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); see also Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1120-21 (9th Cir. 2007). Dismissal under Rule 12(b)(6) may be based on either (1) a lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984)).

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to allow a complaint to survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not sufficiently established that the pleader is entitled to relief. Id. at 1950.

A complaint generally need not contain detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation, alteration, and internal quotations omitted). Similarly, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). That is, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | April 10, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

678-79; see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

**B. APPLICATION**

    **1. CARTWRIGHT ACT**

The Cartwright Act "prohibits the combination of resources of two or more independent interests for the purpose of restraining commerce and preventing market competition in the variety of ways listed in the statute." Lowell v. Mother's Cake & Cookie Co., 144 Cal. Rptr. 664, 671 (Cal. App. 1st Dist. 1978). California courts apply the pleading requirements for a civil conspiracy action to an antitrust claim under the Cartwright Act. Cellular Plus, Inc. v. Superior Court, 18 Cal. Rptr. 2d 308, 314 (Cal. App. 4th Dist. 1993). Accordingly, "the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." Id. (internal quotations and citation omitted); see also Free Freehand Corp. v. Adobe Sys., 852 F. Supp. 2d 1171, 1185 (N.D. Cal. 2012).

Defendants contend both that Plaintiff has failed to adequately allege conspiracy and that, even if he could, the alleged price-fixing scheme at issue does not violate the Cartwright Act. The Court will address those arguments in turn.

    *a. Conspiracy*

It is axiomatic that "[u]nilateral refusal by a producer to deal with a distributor, absent proof that it was pursuant to an illegal conspiracy, does not violate the antitrust laws." Kolling v. Dow Jones & Co., 187 Cal. Rptr. 797, 805 (Cal. App. 1st Dist. 1982); see also Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc., 131 Cal. Rptr. 3d 519, 534 (Cal. App. 2d Dist. 2011) ("[T]he Cartwright Act applies only to a "combination" involving "two or more persons" (§ 16720), not to unilateral conduct."). Accordingly, "[i]f a seller does no more than announce a policy designed to restrain trade, and declines to sell to those who fail to adhere to the policy, no illegal combination is established." Kolling, 187 Cal. Rptr. at 805. "[S]upplier[s] may suggest policies and use persuasion to obtain adherence." Id. However, courts have found an illegal combination to exist "where a supplier secures compliance with announced policies in restraint of trade by means which go beyond mere announcement of policy and the refusal to deal," namely by taking action "to bring about the involuntary acquiescence of its dealers . . . ."

LINKS: 23, 24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | April 10, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

Id.[1]  The Ninth Circuit has referred to this as a "'coercive' refusal to deal claim" and has indicated it requires a showing that the retailer "was coerced into adhering to [the supplier's] policy or that [it] acquiesced in it."  Dimidowich v. Bell & Howell, 803 F.2d 1473, 1478 (9th Cir. 1986); see Hanson v. Shell Oil Co., 541 F.2d 1352, 1357, n.4 (9th Cir. 1976) ("No violation is made out unless plaintiff can show that the supplier's conduct rose to the level of coercion sufficient to deprive the dealers of their free choice.")

Revision argues that "the Complaint failed to identify alleged co-conspirators or a conspiracy with any specificity for anti-competitive purposes."  (R-Mem. at 7.)  Specifically, Revision avers that "Plaintiff has not properly alleged agreement, conspiracy, or combination between two entities; instead, he implies that Revision's *unilateral* conduct toward him was anticompetitive."  (Id. at 11 emphasis in original.)  Lovely Skin similarly argues that there is "no evidence of any agreement or concerted action between or among the Defendants."  (L-Mem. at 6.)  Plaintiff responds that "the complaint contains sufficient allegations to plausibly infer that Revision and Lovely Skin agreed to illegally fix prices . . . ."  (Docket No. 26, [Opp. to Mot. to Dismiss ("Opp.")] at 4.)  Plaintiff points to the emails included in the FAC.  (Id. 5-6.)

The Court finds that Plaintiff inadequately alleges a conspiracy.  The facts as alleged by Plaintiff are that in late 2008, Revision repeatedly asked Plaintiff to raise the price of the Revision products it was selling.  (FAC ¶ 13.)  Plaintiff refused, and in or about January of 2009, Revision stopped selling its products to Plaintiff.  (Id.)  This, as alleged, is unilateral conduct.  While Plaintiff believes the quoted emails push the alleged conspiracy across the Iqbal-Twombly plausibility line, the Court is not persuaded.  At most the emails demonstrate that when Revision stopped supplying Plaintiff, Revision was acting alone, and that it announced its unilateral action in correspondence with at least one other retailer after the fact.  For example, on February 17, 2009 - the date of the first alleged email - an unnamed Revision representative emailed an unnamed Lovely Skin representative that "we have uncovered some of the biggest sites and have either shut them down or they have been given warnings to comply with our web policy."  (Id. ¶ 16.)  What this indicates is that Revision, alone, "shut down" (presumably meaning stopped selling products to) or warned some big retail websites regarding an unspecified web policy.  The fact that the email also indicates Revision at some point had a conversation with Lovely Skin wherein Lovely Skin indicated it wanted to charge more for Revision products fails to show a conspiracy.  It suggests only that Lovely Skin, like most any other retailer, wanted to charge

---

[1] The Ninth Circuit has questioned the validity of this concept.  See Dimidowich v. Bell & Howell, 803 F.2d 1473, 1478 (9th Cir. 1986) (calling into question the precedential value of Kolling, noting that "[i]t will thus be rare for a court to infer a vertical combination solely from a business's unilateral refusal to deal with distributors or customers who do not comply with certain conditions.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | April 10, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

higher prices to achieve a higher profit margin. Exchanges regarding price increases do not in and of themselves amount to a conspiratorial agreement. See Monsanto Co. v. Spray-Rite Serv. Corp., 465 U.S. 752, 762 (1984) ("[T]he fact that a manufacturer and its distributors are in constant communication about prices . . . does not alone show that the distributors are not making independent pricing decisions.").

It is not until an alleged November 2009 email that any kind of possible agreement between Revision and Lovely Skin can plausibly be inferred from the email quotes provided. Until the November 2009 email, "[t]here are no factual allegations regarding . . . any concerted action among" [sic] Revision and Lovely Skin. Somerville v. Stryker Orthopaedics, 2009 U.S. Dist. LEXIS 3052, at *8 (N.D. Cal. Jan. 16, 2009). Even the November 2009 email fails to indicate the contents or terms of any agreement, and "[w]ithout any specific allegations of an agreement, the complaint fails to comply with Federal Rule of Civil Procedure 8." Id. (citing Twombly, 550 U.S. at 565).

This analysis highlights two critical issues. First, the Complaint fails to provide sufficient facts to plausibly establish the terms and conditions of the purported conspiratorial agreement. Second, to the extent that the Complaint contains any specific facts regarding a conspiracy, those facts post-date Plaintiff's alleged injury, thus undermining any claim that the purported conspiracy caused him any injury. As noted above, the communications cited in the Complaint suggest that the earliest a conspiracy might have existed is November 2009, which was many months (perhaps a year) after Plaintiff was terminated as a Revisions re-seller. Thus, he could not in that scenario, have suffered anti-trust injury. See Kolling v. Dow Jones & Co., 187 Cal. Rptr. 797, 807 (Cal. App. 1st Dist. 1982) ("The plaintiff in a Cartwright Act proceeding must show that an antitrust violation was the proximate cause of his injuries.") As noted above, the Cartwright Act does not apply to unilateral conduct, and, to the extent Plaintiff believes it has alleged a coercive refusal to deal claim, Plaintiff has alleged conduct on behalf of Revision that amounts to no more than what was found permissible in Kolling. (See FAC ¶ 13)

### b. *Wrongful Act*

Lovely Skin argues that the alleged price-fixing agreement is not per se unlawful, and should instead be judged by the rule of reason. (L-Mem. at 1, 12-20; see also R-Mem. at 14-15.) Further, under the rule of reason, Lovely Skin argues that the alleged price fixing agreement here does not violate the Cartwright Act. This argument stems from the recent Supreme Court decision, Leegin Creative Leather Prods. v. PSKS, Inc., 551 U.S. 877 (2007), which overruled longstanding precedent and held that "[v]ertical [minimum resale] price restraints are to be judged according to the rule of reason." Id. at 907. It is unclear, however, whether that decision,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | April 10, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

which interpreted the Sherman Act, applies to the Cartwright Act. See Dimidowich, 803 F.2d at 1477 ("The California Supreme Court has said that the Cartwright Act is similar in spirit and substance to the Sherman Act," but "[s]imilar does not mean identical.") (internal quotations and citation omitted).

However, Leegin involved an interpretation of a federal statute, not the Cartwright Act. Under current California Supreme Court precedent, vertical price restraints are per se unlawful under the Cartwright Act. Mailand v. Burckle, 572 P.2d 1142, 1147 (Cal. 1978). There is no indication that precedent is changing. See Chavez v. Whirlpool Corp., 113 Cal. Rptr. 2d 175, 180 (Cal. App. 2d Dist. 2001) ("An agreement between a manufacturer or supplier and distributors or retailers to maintain minimum resale prices is per se unlawful under both the Cartwright Act and the Sherman Act."). While the California Supreme Court's decision in Mailand did rely on Supreme Court authority, there is some indication that the opinion was derived from California authority as well. 572 P.2d at 1147 (citing Speegle v. Board of Fire Underwriters, 172 P.2d 867, 873 (Cal. 1946)). In any event, simply because the Supreme Court has changed course regarding the Sherman Act does not mean the California Supreme Court will regarding the Cartwright Act. Until the California Supreme Court has given a persuasive indication that it will, the Court cannot simply disregard its decision. See West v. American Tel. & Tel. Co., 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted.")

If and when Plaintiff files an amended complaint addressing the concerns in this Order, the Court will apply California Supreme Court precedent, which currently holds that vertical minimum price restraints are per se unlawful under the Cartwright Act.

**2. UCL**

Defendants argue that "Plaintiff's cause of action for unfair business practices . . . entirely depends upon his allegations that Revision violated the Cartwright Act . . . ." (R-Mem. at 14; see L-Mem. at 11-12.) Plaintiff, on the other hand, believes its UCL claim should survive regardless of its Cartwright Act claim. (Opp. at 19-21.)

The Court agrees with Defendants - Plaintiff's UCL claim, as pleaded, is entirely derivative of its Cartwright Act claim. The UCL "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts." Korea Supply Co. v. Lockheed Martin Corp., 63 P.3d 937, 943 (Cal. 2003). The UCL "borrows violations from other laws by making them

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | April 10, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

independently actionable as unfair competitive practices," and, additionally, "under section 17200, a practice may be deemed unfair even if not specifically proscribed by some other law." Id. (internal quotations and citation omitted). Plaintiff avers that it "has properly alleged facts that Defendants' conspiracy amounted to, at least, 'unfair' competition . . . ." However, Plaintiff did not plead a UCL claim under the "unfair" prong. Plaintiff states "[t]he conduct of Defendants constitutes an intentional and systematic violation of California's Cartwright Act . . . and constitutes unlawful, unfair and/or fraudulent business practices . . . ." (FAC ¶ 32.) Plaintiff further states that "[u]pon information and belief, the unlawful conduct alleged in this Complaint is continuing." (Id. ¶ 35.) Plainly the only prong Plaintiff attempts to plead any facts to support is the "unlawful" prong. And as noted above, Plaintiff has not adequately pleaded a violation of the Cartwright Act. Accordingly, Plaintiff's UCL claim must fail. See Aleksick v. 7-Eleven, Inc., 140 Cal. Rptr. 3d 796, 801 (Cal. App. 4th Dist. 2012) ("When a statutory claim fails, a derivative UCL claim also fails.")

## IV.
## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motions to dismiss. Plaintiff's FAC is **dismissed with leave to amend**. Plaintiff must file an amended complaint **no later than the close of business on Monday, April 29, 2013**. The hearing presently scheduled for April 15, 2013 is hereby **VACATED**.

**IT IS SO ORDERED.**