LINKS: 41, 42

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | July 16, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Stephen Montes | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     (In Chambers)

<u>**ORDER RE: MOTIONS TO DISMISS**</u>

**I.
INTRODUCTION**

   Plaintiff Alan Darush MD, APC, sells skin care products to members of the public. He brings this action pursuant to California's antitrust statute, the Cartwright Act, alleging that Defendants Revision, L.P. ("Revision"), a supplier of skin care products, and Lovely Skin, Inc. ("Lovely Skin"), one of his competitors, engaged in the illegal vertical price fixing of Revision's skin care products. Plaintiff contends that the Defendants conspired to fix the minimum price at which retailers would sell Revision's products and that they boycotted Plaintiff because he would not participate in the alleged price fixing agreement.

   Defendants now move to dismiss Plaintiff's Second Amended Complaint ("SAC") for failure to state a claim. (Docket No. 41, [Revision Mot. to Dismiss Second ("R-Mem.")]; Docket No. 42, [Lovely Skin Mot. to Dismiss Second ("L-Mem.")].) They assert that, despite Plaintiff's multiple amended complaints, Plaintiff still fails to put forth facts supporting any conspiracy to vertically fix prices of Revision products. Defendants further argue that in any event Plaintiff has failed to adequately allege antitrust injury. Derivatively, Defendants argue that if Plaintiff's Cartwright Act claim fails, its UCL claim must also fail.

   For the reasons that follow, the Court finds that Plaintiff has adequately alleged both a conspiracy and antitrust harm such that it has stated a claim under the Cartwright Act and, derivatively, under the UCL. Accordingly, Defendants' motions are **DENIED**.

**II.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | July 16, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

## BACKGROUND

**A. FACTUAL BACKGROUND**

Plaintiff alleges that in or about 2005, Revision began selling its skin care products to Plaintiff. (Docket No. 34, [Second Am. Compl ("FAC")] ¶ 10.) Among these products was the "Teamine Eye Complex by Revision," alleged to be quite popular. (Id. ¶¶ 9-10.) Plaintiff alleges that it was successful in marketing Revision products, selling by 2008 "tens of thousands of dollars of Revision skin care products on a monthly basis." (Id. ¶ 10.)

During the time Plaintiff was selling Revision products, "Revision purported to announce a minimum resale price known as a manufacturer's suggested retail price . . . ." (Id. ¶ 11.) Plaintiff alleges that "Plaintiff's retail competitors did not abide [sic] Revision's MSRP," and so to compete in the market, Plaintiff continued to sell below the MSRP. (Id. ¶ 12.) In or around fall and winter of 2008, Revision representatives allegedly contacted Plaintiff multiple times in person and over the phone in an attempt to get Plaintiff to raise his prices. (Id. ¶ 13.) Plaintiff alleges that "Revision representatives threatened to terminate the supply of Revision products to Plaintiff if it did not expressly agree to fix prices." (Id.) Plaintiff declined, and, in or around January 2009, Revision stopped supplying Plaintiff allegedly because he refused to participate in the vertical price-fixing scheme. (Id. ¶¶ 13-14.)

Plaintiff alleges that Revision "also sought agreement from other retailers of Revision products, including Lovely Skin" to enter into a price fixing agreement. (Id. ¶ 15.) Unlike Plaintiff however, Lovely Skin allegedly acquiesced to the price-fixing scheme. (Id.) Plaintiff alleges that, at least as early as 2008, Lovely Skin and Revision entered into a price fixing agreement, "target[ing] retail competitors . . . who were selling Revision products at prices below what Defendants wanted to charge." (Id. ¶ 19.) Therefore, Plaintiff alleges, "Revision's decision to stop selling its skin care products to Plaintiff was not unilateral," but rather "Revision was acting collectively and in concert with other retail competitors, including Lovely Skin." (Id. ¶ 15.)[1]

---

[1] Plaintiff provides paraphrases of testimony and attached email communications between Revision and Lovely Skin, both obtained from unrelated litigation, in support of these allegations. (Id. ¶¶ 16-17, Exs. A-C.) For example, Plaintiff provides paraphrased testimony from Dr. Joel Schlessinger, the owner of Lovely Skin, stating "that he had on-going communications with Revision and that Lovely Skin was not making independent decisions about its prices." (Id. ¶ 17.) Dr. Schlessinger allegedly further testified that he turned to Revision for acceptable product pricing and "testified that he sought to ensure that all retailers were 'working in concert with' Revision and other manufacturers because it could 'potentially hurt' Lovely Skin if they did not." (Id.) Plaintiff also claims to have received information by a Revision representative in the 2007-2008 time period "that Revision

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | July 16, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

On the basis of the aforementioned allegations, Plaintiff brings two claims: (1) violation of the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, et seq.; and (2) violation of California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.

**B. PROCEDURAL BACKGROUND**

Plaintiff brought its First Amended Complaint ("FAC"), stating the same claims on the basis of generally similar facts. The Court found that Plaintiff failed to adequately allege the existence of the purported conspiratorial agreement, and, to the extent that Plaintiff alleged any facts regarding an agreement, the facts long post-dated Plaintiff's alleged injury. (04/10/13 Order at 7.) Plaintiff provided only paraphrased email communication and no allegations stemming from Dr. Schlessinger's testimony in its FAC. The Court dismissed Plaintiff's FAC with leave to amend. (Id. at 9.) As discussed below, the Court is satisfied that Plaintiff has cured the defects in the prior complaints.

**III.
DISCUSSION**

**A. RULE 12(B)(6) LEGAL STANDARD**

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). On a motion to dismiss under Federal Rule of Civil Procedure ("F.R.C.P.") 12(b)(6), a court must accept as true all factual allegations pleaded in the complaint, and construe them "in the light most favorable to the nonmoving party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); see also Stoner v. Santa Clara County Office of Educ., 502 F.3d 1116, 1120-21 (9th Cir. 2007). Dismissal under Rule 12(b)(6) may be based on

---

and Lovely Skin had 'special arrangements' with respect to pricing of Revision products." (Id. ¶ 18.)
    With respect to the purported email exchanges between Revision and Lovely Skin representatives, Plaintiff offers them as evidence of Defendants' price-fixing discussions. (Id. ¶ 20.) Plaintiff contends that the emails indicate that "Revision was using its successes in terminating retailers who did not acquiesce to its price fixing agreement to ensure Lovely Skin's continued adherence to a price fixing agreement." (Id., Ex. A at 18.) Plaintiff provides email communication indicating that Lovely Skin was participating in the shutting down of retailers that sold Revision products at a discount. (Id. ¶ 21, Ex. A at 17, Ex. C at 99.) Plaintiff alleges that when viewing the testimony, email communications, and other allegations as a whole, it is "clear that Revision and Lovely Skin were participants in a classic per se minimum vertical price fixing scheme for many years." (Id. ¶ 27.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | July 16, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

either (1) a lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984)).

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to allow a complaint to survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not sufficiently established that the pleader is entitled to relief. Id. at 1950.

A complaint generally need not contain detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation, alteration, and internal quotations omitted). Similarly, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). That is, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 678-79; see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).

**B. APPLICATION**

**1. CARTWRIGHT ACT**

The Cartwright Act "prohibits the combination of resources of two or more independent interests for the purpose of restraining commerce and preventing market competition in the variety of ways listed in the statute." Lowell v. Mother's Cake & Cookie Co., 144 Cal. Rptr. 664, 671 (Cal. App. 1st Dist. 1978). California courts apply the pleading requirements for a civil conspiracy action to an antitrust claim under the Cartwright Act. Cellular Plus, Inc. v. Superior Court, 18 Cal. Rptr. 2d 308, 314 (Cal. App. 4th Dist. 1993). Accordingly, "the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." Id. (internal quotations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | July 16, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

and citation omitted); see also Free Freehand Corp. v. Adobe Sys., 852 F. Supp. 2d 1171, 1185 (N.D. Cal. 2012).

Defendants contend that Plaintiff, despite this being its third complaint, has still failed to adequately allege a conspiracy and antitrust damages. The Court, however, reading the new factual allegations and the attached emails together, disagrees.

### *a. Conspiracy*

It is axiomatic that "[u]nilateral refusal by a producer to deal with a distributor, absent proof that it was pursuant to an illegal conspiracy, does not violate the antitrust laws." Kolling v. Dow Jones & Co., 187 Cal. Rptr. 797, 805 (Cal. App. 1st Dist. 1982); see also Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc., 131 Cal. Rptr. 3d 519, 534 (Cal. App. 2d Dist. 2011) ("[T]he Cartwright Act applies only to a 'combination' involving 'two or more persons' (§ 16720), not to *unilateral* conduct.") (emphasis in original). Accordingly, "[i]f a seller does no more than announce a policy designed to restrain trade, and declines to sell to those who fail to adhere to the policy, no illegal combination is established." Kolling, 187 Cal. Rptr. at 805. At the motion to dismiss stage, a complaint asserting an illegal combination is sufficient if the allegations "plausibly suggest[] . . . agreement . . . ." Twombly, 550 U.S. at 557; see also DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. R.I. 1999) ("[T]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation - for example, identifying a written agreement or even a basis for inferring a tacit agreement . . . ."); In re Late Fee & Over-Limit Litig., 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) ("To survive the motion to dismiss, the plaintiffs are required to allege some 'further circumstance pointing toward a meeting of the minds.'") (quoting Twombly, 550 U.S. at 557). "[G]eneral allegations of a conspiracy unaccompanied by a statement of facts constituting the conspiracy and explaining its objectives and impact in restraint of trade will not suffice." G.H.I.I. v. MTS, Inc., 195 Cal. Rptr. 211, 216 (Cal. App. 1st Dist. 1983).

Defendants argue, essentially, that Plaintiff fails to adequately allege an illegal combination. While the Court views this question as close, the Court finds that, viewing the factual allegations in the light most favorable to Plaintiff, Plaintiff has alleged sufficient factual support from which to infer a plausible agreement. Plaintiff alleges, citing to Dr. Schlessinger's testimony, that Lovely Skin was not making independent decisions regarding pricing, and in fact Lovely Skin was acting "to ensure that all retailers were 'working in concert with' Revision and other manufacturers because it could 'potentially hurt' Lovely Skin if they did not." (Id. ¶ 17.) Email communications support this, indicating that as of about February 2008, Lovely Skin was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | July 16, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

communicating with Revision regarding a desire to increase prices of the Teamine Eye Complex. (Id. Ex. A at 18.) Additionally, as of at least February 2009, Lovely Skin and Revision were allegedly acting together to stop selling product to certain websites that retailed at "horrible discount[s]". (Id. Ex. A at 17-18.) Defendants continued to communicate into May of 2009 regarding the termination of certain discount cites with the objective of raising retail prices on the Teamine Eye Complex. (Id. Ex. B at 29-30.) For example, in an email sent by a Revision representative to Dr. Schlessinger on May 28, 2009, Revision stated that "[i]f you . . . would like specific actions on our internet accounts, I will be happy to forward you that information." (Id. Ex. B at 30.) This, by way of example, indicates a cooperation between the Defendants to eliminate retail competitors who were discounting the price of Revision products. It is at least plausible that Lovely Skin and Revision conspired to boycott certain retailers in an effort to raise the overall price of certain Revision products. The same is indicated by a series of emails Plaintiff provides that were sent between Defendants in November of 2009. (Id. Ex. C.)[2]

Although Plaintiff cannot put an exact date on when the conspiracy began or the precise terms of the agreement, Plaintiff now provides sufficient factual support to make plausible an agreement between Revision and Lovely Skin to vertically fix prices and eliminate retailers selling at a discount. (Id. ¶¶ 15-19, Exs. A-C.) It is also plausible that this agreement existed prior to the termination of Plaintiff's status as a seller of Revision products. (Id.) Plaintiff adequately alleges that at least part of the agreement was "jointly work[ing] to eliminate competitors and jointly agree[ing] on the price levels for Revision products, increasing those prices as non-compliant competitors were terminated." (Id. ¶ 19.) At this stage, Plaintiff need not allege word for word the agreement at hand, but instead must only allege sufficient facts to plausibly suggest an agreement. See Twombly, 550 U.S. at 556-57. Plaintiff adequately alleged as much here. Plaintiff's additional allegations and the attached emails, read in the light most favorable to Plaintiff, suggests not merely an exchange between a manufacturer and a retailer regarding prices, but an effort between Defendants to raise prices and eliminate discount retailers. (SAC ¶¶ 17, 19.) Defendants' arguments that Plaintiff must allege specifics in the form of the precise terms of the agreement, "[w]ho negotiated th[e] agreement," and where the meetings regarding the agreement occurred are not supported by any statute or controlling authority. ( L-Mem. at 6; R-Mem. at 14 n.4, 19; Docket No. 44, [R-Reply to Mot. to Dismiss

---

[2] The emails in Exhibit C reference shutting websites down for "violating [Revision's] internet policies." (Id., Ex. C; see also id. Ex. A at 18.) However, Plaintiff alleges that "Revision did not maintain policies requiring retailers to invest in improvements to their websites," (id. ¶ 11), and neither Defendant makes any argument as to the existence of the internet policies, their nature, or the greater role they may have played.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-10296 GAF (AGRx) | Date | July 16, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

("R-Reply")] at 1.)[3]

### b. *Antitrust Injury*

The only other element of Plaintiff's Cartwright Act claim Defendants challenge is whether Plaintiff has adequately alleged an antitrust injury. (L-Mem. at 17-20; R-Mem. at 7 n.2.) More specifically, Lovely Skin argues that Plaintiff fails to allege an injury to competition, rather Plaintiff merely focuses on an injury to itself. (L-Mem. at 19.) That, Defendants argue, is not the proper focus of antitrust law. Additionally, Lovely Skin argues that Plaintiff is unable to allege that a conspiracy existed before the date of its termination such that Plaintiff could have suffered an antitrust injury. (Id. at 19.)

"[T]he Cartwright Act, like all antitrust laws, is about the protection of *competition*, not *competitors*." Asahi Kasei Pharma Corp. v. CoTherix, Inc., 138 Cal. Rptr. 3d 620, 636 (Cal. App. 1st Dist. 2012) (internal quotations and citations omitted, emphasis in original). For a plaintiff "to recover damages for antitrust violations, [it] 'must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" Flagship, 131 Cal. Rptr. 3d at 528 (quoting Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977)). That said, alleging an antitrust injury requires only "that an antitrust plaintiff must show that it was injured by the anticompetitive aspects or effects of the defendant's conduct . . . [;] the plaintiff need not show that the market has actually become less competitive than it would have been without the defendant's conduct . . . ." Id. at 529-30.

A persuasive case on this issue, and one cited favorably in Flagship, is the Supreme Court's decision in Klor's v. Broadway-Hale Stores, 359 U.S. 207, 209 (1959). In Klor, the Court analyzed whether an antitrust claim requires the allegation that "the opportunities for customers to buy in a competitive market are reduced . . . ." Id. at 210. The Court held that the Sherman Act proscribes a combination that "takes from [a retailer] its freedom to buy [a manufacturer's products] in an open competitive market and drives it out of business as a dealer

---

[3] To the extent the Court previously indicated otherwise, (see 04/10/13 Order at 7), the Court only intended to convey that a plaintiff needed to allege sufficient information to make the existence of an agreement plausible. Twombly requires only that. 550 U.S. at 557. This can be done by "alleg[ing] facts *such as* a 'specific time, place, or person involved in the alleged conspiracies' . . . ." Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting Twombly, 550 U.S. at 565 n.10) (emphasis added). Twombly holds that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Twombly, 550 U.S. at 556. The Court finds that Defendants are asking for more than evidence of an agreement; they are asking for the agreement itself. This exceeds what is required at this stage.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 12-10296 GAF (AGRx) | Date | July 16, 2013 |
|---|---|---|---|
| Title | Alan Darush MD APC v. Revision LP et al | | |

in the defendants' products." Id. at 213. Conduct does not evade antitrust laws simply "because the victim is just one merchant whose business is so small that his destruction makes little difference to the economy." Id. In a similar light, the California Court of Appeals noted that "cancellation of a distributorship for anticompetitive reasons violates the antitrust laws and is thus actionable," even if a single merchant is the sole complainant. Kolling, 187 Cal. Rptr. At 804, 808. The inquiry in such a case turns "upon evidence of a conspiracy and an anticompetitive purpose and effect behind the termination." Id. Importantly, in the realm of per se unlawful restraints - which a vertical minimum price fixing scheme is under California law (see 04/10/13 Order at 8) - "the case will be quite rare in which a per se violation . . . does not cause competitive injury." Kolling, 187 Cal. Rptr. at 808. Plaintiff has certainly alleged sufficient antitrust injury here. Plaintiff alleges that its "injury is caused by [its] unlawful termination as a distributor - pursuant to Defendants' unlawful price fixing agreement - resulting in a reduction in competition and increased prices to consumers purchasing Revision products." (Opp. at 21; SAC ¶¶ 13-15, 27, Ex. A.) That the market for Revision products may be just as vibrant as ever does not detract from Plaintiff's injury. Plaintiff adequately alleges that it was harmed by Defendants' anticompetitive conduct, conduct that the Cartwright Act seeks to prevent. Additionally, the Court already found that Plaintiff adequately alleged that the conspiracy existed prior to the termination of Plaintiff's retailership.

### 2. UCL

Defendants argue that Plaintiff's UCL claim fails because it is entirely derivative of its Cartwright Act claim. (R-Mem. at 22-24; L-Mem. at 20-22.) Because the Court finds that Plaintiff's Cartwright Act claim is adequately pleaded, the Court finds that Plaintiff's UCL claim similarly survives Defendants' motions.

### IV.
### CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motions to dismiss. Defendants must file their respective responses to the pending SAC no later than August 5, 2013.

**IT IS SO ORDERED.**